UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Crim. No. 14-10179 (NMG) |
| | ) | |
| JUSTIN RICHARDSON, | ) | |
| | ) | |
| a/k/a "Jay", | ) | |
| | ) | |
| Defendant. | ) | |

SENTENCING MEMORANDUM OF THE UNITED STATES

On August 13, 2014, Justin Richardson, who went by the nickname "Jay" (hereinafter "Richardson" or "defendant"), pleaded guilty to Count One of an Information that charged him, along with co-defendant Martin Pinkney, with the sex trafficking of a then 15-year old minor, in violation of 18 U.S.C. § 1591(a) and (b)(2).

The Pre-Sentence Report ("PSR") prepared by the United States Probation Office correctly calculated the defendant's guideline sentencing range ("GSR") at 210 to 262 months, based on a total offense level of 33 and a Criminal History Category of V. PSR, ¶ 132. There is also a statutory mandatory minimum sentence of 120 months imprisonment. PSR, ¶ 131.

Consistent with the government's plea agreement with Richardson, the United States respectfully requests that the Court sentence Pinkney to a sentence of 168 months' imprisonment and to a five-year term of supervised release. Such a sentence would certainly reflect the seriousness of the offense, the need to deter the defendant and others similarly situated from sexually victimizing minors; and to avoid unwarranted sentencing disparities. The United States disputes that the defendant's mental health warrants a non-GSR sentence, but it otherwise submits that a variance to a 168-month sentence would be appropriate in light of defendant's persistent but non-violent criminal history. While it is striking how consistently Richardson has

been involved with the criminal justice system since the age of 12, and raises serious concerns about recidivism, the nature of the defendant's prior convictions are considerably less serious than his offense of conviction. A 17-to-21 year sentence under these circumstances seems excessive.

I.      THE OFFENSE

As set forth in the PSR, on December 22, 2013, the Cambridge Police Department rescued a fifteen-year old runaway, identified in the PSR and the Information as "Minor A", from the Courtyard by Marriott in that city. PSR ¶ 9. Mark Pinnock was alone with Minor A in that hotel room. PSR ¶ 10. Officers found tools of the sex trade inside the hotel room, including 15 condoms (one used) and provocative women's clothing and shoes. PSR, ¶ 20.

Minor A appeared to fear speaking to the police in front of Pinnock. She spoke with the rescuing officers only in the bathroom of the hotel room and would do so only when the door to the bathroom was closed. When an officer would enter or leave the bathroom, Minor A stopped speaking until the door was closed again. PSR ¶ 10.

Minor A told the police she had traveled by bus from her home in Baltimore, Maryland. Two Baltimore men named "Snugglez" and "Jay", later identified as defendants Pinkney and Justin Richardson, had arranged with Pinnock for Minor A to travel to Boston so that she could be an "escort". PSR ¶ 11. Minor A had telephone numbers with her for both "Snugglez" and "Jay", PSR ¶ 12, and stated that she had communicated with "Jay" over the Facebook account "Jay Loyal Richardson".

Minor A had stayed at Pinkney's Baltimore apartment for several days before she left for Boston. PSR ¶ 13. In Pinkney's apartment, Minor A had access to alcohol and marijuana. Id.

2

On December 17, 2013, the day Minor A was reported missing, Pinkney sent the following Facebook text message to Pinnock, his first cousin:  "To Marko hit me back asap I got sum for u lil withe [white] thing."  PSR, ¶ 23.  Telephone records show attempted calls to Pinnock at about the same by both Pinkney and Richardson's cell phones.  PSR, ¶ 22.

On December 18, 2013, the coconspirators (defendants Pinkney and Richardson and another individual, R.M.) were all present when sexually provocative pictures were taken of Minor A in Pinkney's Baltimore shower stall and on his living room sofa and then sent by cell phone to Pinnock.  PSR, ¶ 24.  Several of the photographs were sent to Pinnock from Richardson's phone.  Id.  Pinnock used these pictures to advertise Minor A for sex on an Internet classified websites well before Minor A even arrived in Boston.  PSR, ¶ 24.

A review of Richardson's Facebook account, "Jay Loyal Richardson," showed communications on December 19, 2014 with a second female, A.H., who Richardson invited by text message to travel to Boston.  In a Facebook message, Richardson asked A.H., who was not a minor, to Pinkney's apartment.  A.H. appears in several of the nude and provocative photographs of Minor A which were sent to Pinnock from Richardson's phone.  Based on conversations with Richardson, Pinkney, R.M., and Minor A, A.H. believed that she was being invited to Boston to prostitute herself, despite the fact that none of these individuals made specific reference to sex acts.  A.H. left the apartment shortly after the pictures were taken following an argument with Pinkney and Richardson because she did not like the fact that Richardson treated Minor A poorly.  PSR, ¶ 26.

On December 19, 2014, Richardson's Facebook account was used to post photographs of Minor A, naked except for high-heeled shoes.   PSR ¶ 27.

3

Minor A traveled without a cell phone and with less than $20 in her pocket to a city she had never visited before.  Pinkney and Richardson told Minor A that their cousin, "Mark", would keep Minor A safe in Boston.  PSR ¶ 14.

Pinnock met Minor A at Boston's South Station early on Friday morning, December 20, 2013.  PSR ¶ 15.  Pinnock took Minor A to a Ramada Inn in Dorchester, Massachusetts.  Id. While at the Ramada Inn, Pinnock used his cell phone to take more provocative pictures of Minor A.  Pinnock posted the pictures to the websites Craigslist.org and Backpage alongside classifieds advertising commercial sex with a Minor A.  PSR ¶ 30.

Pinnock was with Minor A over the better part of the next two days as she committed commercial sex acts with as many as 10 customers at the Ramada.  PSR ¶ 16.  Minor A gave the money she received for performing the sex acts to Pinnock.  Id.

Pinnock and Minor A left the Ramada for the Marriott on December 22, 2014, but not before meeting up with an individual identified as "T.H."  T.H. monitored Minor A's dates with "johns" at the Ramada, and as evidenced by text messages seized from Pinnock's cell phone, kept Pinnock advised of when Minor A would be ready for other customers.  PSR ¶ 17.  T.H. and Pinnock later got into a fight over Minor A's having purchased an expensive pizza, which led to T.H.'s leaving Minor A alone in the Marriott.  Minor A reached out to her father, who called 9-1-1.

Minor A told the police that she did not believe that she could leave either hotel because Pinnock had paid for her bus ticket and her hotel stays.  Minor A also told police that Pinnock told her that he was her only way home because she did not have any money.  PSR ¶ 19.

4

Minor A's December 22, 2013 chat with a Facebook friend, "Likea' Boss Chink," just before she was recused illustrates Minor A's concerns.  In that chat, Minor A made the following statements, including, among others, "like wtf man what did i get myself into," "sitting here crying not knowing what to do," "i fucking I hate life," "dont nobody care," "how the fuck do i get out of this situation," "so how do I get back home," "the person wont let me come back," "the ppl [people] i trusted they said tht ill be good and safe but im not im scared," and they said they'll be out here after januray 1," "… idk [I don't know] what to do my dam self," and "IM SCARED."  PSR, ¶ 33.

Although Minor A made no allegations of physical abuse -- apart from the sex acts of the "johns" themselves – she did not have the means to leave Boston and did not feel that she could.

## II.   ARGUMENT

### A.    A 168-Month Sentence is Warranted by this Abhorrent Offense

Richardson put a 15-year runaway on a bus to Boston to prostitute herself.  He and his coconspirators took and sent the pictures to Pinnock that set the process in motion.  Richardson also attempted unsuccessfully to recruit another adult woman to travel with Minor A. Richardson preyed on Minor A, with Pinkney told her that she would be "good and safe", PSR ¶ 33, and then put her directly in harm's way.  Congress recognized the seriousness of this offense by providing for a mandatory minimum term of imprisonment of 120 months and a maximum term of life imprisonment.  See 18 U.S.C. § 1591(a) and (b)(2).

Considering the physical harm done to Minor A after she was given access to drugs and alcohol at Pinkney's apartment, there is little reason to depart from the otherwise applicable GSR based on the seriousness of this offense, the need to promote respect for the law, and the need to

deter others from engaging in similar conduct in the future.  As with his co-defendants, what is remarkable about Richardson is the contrast of this violent offense and the lack of such convictions in his criminal history.  A substantial sentence of imprisonment is important for deterrence because of how easily Richardson stepped from relatively benign criminal behavior into victimizing Minor A, and how easily others could as well.

      B.      A 168-Month Sentence Appropriately Protects the Public and Takes Into Account the Defendant's Likelihood of Recidivism

The defendant's adult criminal history is remarkable for a 22-year old man.  In little over three years, the defendant amassed scoring criminal convictions and imprisonment for possession of marijuana (PSR ¶ 54), possession of marijuana (PSR ¶ 55), theft of a rental car (PSR, ¶ 56), possession of a controlled substance (PSR ¶ 57), and unlawful removal of property (PSR, ¶ 58).  Richardson was also on probation at the time he trafficked Minor A.  These persistent offenses placed him, appropriately, in Criminal History Category V.  Richardson's juvenile history also shows long-term involvement with the criminal justice system and interventions that quite simply failed to re-direct Richardson.

If the past offers any prediction, Richardson remains at serious risk to re-offend, and a sentence of 168 months will protect the public from him, enable him to obtain necessary services from the Bureau of Prisons, and hopefully deter Richardson from re-offending upon his release from custody.

Richardson's offense in this case, however, is far more serious than any of his prior convictions, even allowing for the fact that some of the drug possessory offenses may have in fact been for distribution.  He appears not to have served more than 164 days in jail for any of these convictions, even after violations of the term and conditions of probation or suspended

sentences.  A sentence – more than 17 years at the low end of the calculated GSR -- seems

disproportionate to the needs of sentencing.  At 168 months, defendant faces an appropriately

lengthy sentence that will see him imprisoned into his early 30s.

CONCLUSION

For the reasons above, the United States respectfully requests that the Court sentence

Justin Richardson to 168 months' imprisonment and five years' supervised release.  The United

States does not seek the imposition of a fine, as it appears that Richardson does not have the

means to pay one.

Respectfully submitted,

CARMEN M. ORTIZ
United States Attorney

By:     _/s/Seth B. Kosto_____
Seth B. Kosto
Carlos A. Lopez
Assistant U.S. Attorneys

CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that this document was sent by electronic mail message
to counsel for the defendant on December 17, 2014.

_/s/Seth B. Kosto_____
Seth B. Kosto
Assistant U.S. Attorney